PARKER DRILLING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 33490.    Filed February 21, 1957.

*F. C. Niswander, Esq., Benjamin H. Saunders, Esq., H. O. Reyburn, C.P.A.,* and *W. I. Nicholson, C.P.A.,* for the petitioner.
*William V. Crosswhite, Esq.,* for the respondent.

798

## OPINION.

Murdock, *Judge:* The actual average base period net income of the taxpayer was $328,669.42. However, the Commissioner, in the computation of the excess profits credit of the petitioner for the taxable years, did not use that figure but used instead $402,755.55, an adjusted figure arrived at under section 713 (e). He allowed an excess profits credit of $382,546.72 for 1944 and one of $381,600.09 for 1945. The petitioner, in order to obtain any relief in this case, must establish a fair and just amount to represent normal earnings to be used as a constructive average base period net income which will result in a credit larger than that allowed by the Commissioner. The petitioner is contending in this case for constructive average base period net income in the amount of $564,920.98, which it arrives at by reconstructing its income for each of the base period years as follows: $755,241.41 for 1936, $849,610.47 for 1937, $556,936.04 for 1938, and $97,896.01 for 1939.

Section 722 (b) (4) provides that the excess profits tax shall be considered excessive and discriminatory in a case like this if its average base period net income is an inadequate standard of normal earnings because the taxpayer, during the base period, changed the character of its business and the average base period net income does not reflect a normal operation for the entire base period of the business. The term "change in the character of the business" includes a difference in the capacity for production or operation. The principal contention of the petitioner is that it had a change in capacity resulting from the acquisition of additional drilling rigs during the base period. The Commissioner concedes that there was an increase in the drilling equipment owned by the petitioner during the base period years which increased its capacity for production or operation but argues that the petitioner has not shown that it is entitled to any relief by reason of that change.

Section 722 (b) (4) contains a provision that "[i]f the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had commenced business or made the change in the character of the business two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier time." The petitioner does not expressly rely upon this provision or show that it has any application to the case. The petitioner argues, however, that it could have employed 23 rotary rigs and all of its additional cable tool equipment throughout the base period if it had had that equipment on hand at all times.

The Commissioner claims that the petitioner was not using to their full capacity in any taxable year, except perhaps in 1937, the drilling rigs which it actually possessed in each of those years, its earnings fell

off in 1939 when it owned the most rigs, the footage drilled in 1937, 1938, and 1939 was about the same, the petitioner was getting practically all of the business which it could get regardless of how many drills it had, except perhaps in 1937, and the low earnings of 1939 were attributable in some part to the fact that the petitioner had too many rigs. The Commissioner disagrees with most of the petitioner's proposed reconstruction of base period earnings and argues that the ownership of additional rigs would not have increased the earnings of the taxpayer to an extent which would even approach that necessary to bring relief because of numerous other factors.

Careful study of the entire record on this point fails to show any reasonable basis for the petitioner's computation on this, its principal point. It provides no reason to compute increased earnings for 1939. The taxpayer had in that year all of the rigs that it is talking about. 1938 was the taxpayer's best base period year from the standpoint of net earnings, despite the decline in crude oil prices in October of that year. It started that year with 18 rotary rigs and ended with 22. There is insufficient indication that the earnings for that year would have been greater had the petitioner acquired the additional rigs a fraction of a year sooner. It is possible that the earnings of the petitioner for 1936 and 1937 might have been somewhat larger if it had had some additional rigs during those years. It used 3 rented rigs in 1936 and 4 in 1937. It might have earned a little more on those jobs if it had been able to use its own rigs, and it might possibly have gotten some additional business if it had owned additional rigs. However, it is not clear from the evidence that this is so, and certainly it is not apparent that sufficient earnings for relief would have been derived in this way.

The petitioner began in 1937 to drill oil wells under contracts in which its compensation would be an interest in the oil lease or oil payments, but would receive nothing for drilling a dry hole. Previously its contracts had been for a cash consideration for the work done. It contends that this change in its method of receiving its payment was a change in the operation of its business or a difference in the products or services furnished within the meaning of section 722 (b) (4). It is not necessary to decide whether or not this was a change within those provisions. Its actual experience during the base period years from this change and the record as a whole fail to indicate any improvement in its earnings sufficient to justify a finding that there would have been any substantial constructive average base period net income from this source.

Section 722 (b) (1) provides that the excess profits tax shall be considered to be excessive and discriminatory in a case like this if the average base period net income is an inadequate standard of normal earn-

ings because in one of the base period years normal production output or operation was interrupted or diminished because of the occurrence during the base period of events unusual and peculiar in the experience of such taxpayer. The petitioner claims relief under this provision based upon a severe fire which occurred in 1936. The fire destroyed about $100,000 worth of equipment belonging to the petitioner and required the petitioner to bring in other equipment to finish the well. The equipment loss was fully covered by insurance. The petitioner says that instead of its average profit of about $11,000 on a well it had a loss on this well of about $3,600 and its income for 1936 should be increased by approximately $14,700 on this account. It is unnecessary to decide this point because even the amount claimed would not be sufficient, in combination with all other additional earnings which the record might justify, to give the taxpayer any relief.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*